STOCKGROWERS' STATE BANK OF MOUNTAIN HOME et al. v. CORKER.

(Circuit Court of Appeals, Ninth Circuit. February 8, 1915.)

No. 2368.

1. BANKRUPTCY ⚙️166—PREFERENCES—NOTICE THAT PREFERENCE WILL BE EFFECTED.

Where·at the time, within four months before bankruptcy, the F. Bank, to which the bankrupt was indebted, induced the S. Bank to make a loan secured by a chattel· mortgage, with the proceeds of which the F. Bank was paid, the bankrupt was insolvent and had other outstanding debts of a large amount, the cashier of the F. Bank had directed the attention of the directors to) unpaid drafts against the bankrupt, and he then considered the bankrupt's account unsatisfactory, because accrued interest was not forthcoming as demanded, the F. Bank had reasonable cause to believe that a preference would be effected.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. ⚙️166.] ,

2. BANKRUPTCY ⚙️161—PREFERENCES—CHATTEL MORTGAGE.

A chattel mortgage on a stock of merchandise, given by a bankrupt within four months before bankruptcy, was not valid for the amount of a prior mortgage given more than two years before, where in the meantime the merchandise was being disposed of daily in the ordinary course of business, and replenished by other goods from time to time, without any provision being made for the application of the proceeds of sales to the mortgage indebtedness, and it did not appear that any of the goods originaly mortgaged remained in stock at the time of the subsequent mortgage, as it is the rule in Idaho that such a mortgage is void as against creditors and other interested parties, though good as between the mortgagor and mortgagee as to all property not disposed of.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. ⚙️161.]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by Charles E. Corker, trustee of Thomas Trathen, bankrupt, against the Stockgrowers' State, Bank of Mountain Home and another. Judgment for plaintiff, and defendants appeal. Affirmed.

In the town of Mountain Home, Idaho, there were two furniture stores and two banks. One furniture store was conducted by the Thompson Furniture Company, and the other by one Trathen. Trathen owed the First National Bank on two notes, one for $1,700, and one for $500. The Thompson Furniture Company owed the Stockgrowers' State Bank an unsecured note for $3,400 and interest, together with overdrafts. Chattin, president of the First National Bank, was a director also in the Stockgrowers' Bank; Montgomery, assistant cashier of the First National Bank, was a director in the Stockgrowers' Bank; and Green was the attorney for both. Wolfe, another attorney, held assignments from certain creditors of Trathen, amounting to something over $800, and he was pressing these claims for collection. Trathen, in order to satisfy these demands, went to the First National Bank and applied for an additional loan. The matter was discussed with the officers and directors of the bank. The cashier of that bank considered the Trathen account unsatisfactory, because Trathen had been slow in paying interest. He investigated Trathen's assets, and advised his board of directors not to make the loan. The directors at first decided to make the loan, but thereafter, after interviewing Trathen, the additional loan was declined. Those members of the board of directors of the First National Bank who were favorable to making the loan to Trathen then went to the Stockgrowers' Bank and induced that

⚙️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bank to loan Trathen the money he needed to take up his debt to the First National Bank, as well as to pay Wolfe's clients. Trathen was notified that his application to the First National Bank had been denied, but that the Stockgrowers' Bank would furnish him the necessary money. He made no application to the Stockgrowers' Bank for a loan. On July 13, 1911, a note and chattel mortgage on Trathen's stock in the furniture store to the Stockgrowers' Bank were prepared by Green at the instance of that bank, and were executed by Trathen. About the same time the Stockgrowers' Bank called its loan to the Thompson Furniture Company, and that company paid the Stockgrowers' Bank through a loan secured from the First National. The outcome of the transaction was that the Stockgrowers' Bank paid the First National $2,294.35, and agreed to pay Wolfe $853.49, and it received from the First National Bank $3,606.69 on the debt owing from the Thompson Furniture Company. The Stockgrowers' Bank, having ascertained that the property on which it had taken its mortgage was not entirely satisfactory, refused to advance the money to pay Wolfe, and thereafter that bank began foreclosure proceedings, and on October 2, 1911, the sheriff sold to it the mortgaged property on the foreclosure for $2,465.18. On October 23, 1911, Trathen was adjudged a bankrupt, and thereafter the trustee in bankruptcy demanded of the Stockgrowers' Bank the possession of the goods obtained on the foreclosure. On August 8, 1913, the trustee brought the present suit against the two banks to recover, for the benefit of creditors of the bankrupt estate, the possession of the stock of furniture and notes and accounts of Trathen which had been mortgaged to the Stockgrowers' Bank. Upon the issues and the evidence, the court below held that the chattel mortgage and the foreclosure thereof created a fraudulent preference in favor of the First National Bank, and ordered the defendants to redeliver the property to the trustee within 20 days from the date of the decree, and in default thereof that judgment be entered against the defendants in the sum of $2,465.18, which was found to be the value of the property.

E. M. Wolfe, of Twin Falls, Idaho, and Wyman & Wyman, of Boise, Idaho, for appellants.

Harry S. Kessler, of Boise, Idaho, and W. C. Howie, of Mountain Home, Idaho, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants contend that the court below erred in decreeing that the mortgage to the Stockgrowers' Bank was a fraudulent preference. We find no ground for disturbing the conclusion of the court below that the bankrupt was insolvent at the time when the mortgage was made, that the effect of the mortgage was to enable the First National Bank, a creditor of the bankrupt, to obtain a greater percentage on its debt than any other creditor of the same class, and that at the time of taking the mortgage the defendants had reasonable cause to believe that the enforcement thereof would effect a preference within the meaning of the Bankruptcy Act. The record shows that, in addition to the debt which was at that time owing to the First National Bank and the claims which were represented by Wolfe, Trathen had outstanding debts of a large amount, and that the cashier of the First National Bank had directed the attention of his directors to the fact that there were unpaid drafts against Trathen, and that he testified that he considered the Trathen account unsatisfactory, because he had made demand for accrued interest, and it was not forthcoming. In Loveland on Bankruptcy, § 508, the law is thus stated:

"Constructive notice is sufficient, upon the ground that, when a party is about to perform an act by which he has reason to believe that the rights of a third party may be affected, an inquiry as to the facts is a moral duty and diligence, and an act of justice. Whatever fairly puts a party upon inquiry is sufficient notice where the means of knowledge are at hand, and if the party under such circumstances omits to inquire and proceeds to receive the transfer or conveyance, he does so at his peril, as he is chargeable of knowledge and of all the facts, which by a proper inquiry he might have ascertained."

Austin testified:

"I imagine I had investigated his assets, and knew practically what they consisted of. I presume I advised the board of directors as to what his property consisted of, though I cannot say positively."

[2] The principal contention of the appellants is that, notwithstanding the circumstances under which the mortgage was given to the Stockgrowers' Bank, it was good to the amount of $1,700; that being the amount for which, on April 12, 1909, Trathen had executed his mortgage on the same property to Evans and Owens to secure them as indorsers on his note for $1,700 to the bank, and which mortgage was transferred to the First National Bank a month prior to the execution of the mortgage to the Stockgrowers' Bank. But the mortgage to Evans and Owens covered Trathen's stock of merchandise as it was in April, 1909. During the 2 years and 3 months that elapsed between that date and the date of the mortgage to the Stockgrowers' Bank, the stock of merchandise was being disposed of daily, in the ordinary course of business, and was replenished by other goods from time to time. The appellants introduced no evidence whatever to show that any of the goods originally mortgaged to Evans and Owens remained in stock at the time of the execution of the mortgage to the Stockgrowers' Bank.

In Ryan v. Rogers, 14 Idaho, 309, 94 Pac. 427, it was held that where the mortgagor of a stock of merchandise, constituting his stock in trade, remains in possession of the chattels mortgaged, and with the knowledge and consent of the mortgagee continues to sell and dispose of the same without applying the proceeds of the sales to the reduction of the mortgage debt, the mortgage is thereby invalidated as against creditors and other interested third parties, although such a mortgage would be good as between the mortgagor and the mortgagee as to all property not so disposed of, and also held that if the mortgagee took possession of the mortgaged property prior to the assertion of right or acquisition of claim against the property by a creditor's attachment or execution, or other lien, the mortgagee will be protected to the extent of his claim. In the case at bar the mortgage made no provision for the application of the proceeds of the sales to the mortgage indebtedness, and possession of that merchandise was never at any time taken by the mortgagees or by the First National Bank. It follows that mortgage did not create a lien superior to the rights of the bankrupt's creditors. The recent decision of the Supreme Court of Idaho in Cauthorn v. Burley State Bank, 144 Pac. 1108, is not inconsistent with this construction of the law of the state.

Appellants suggest that, if we take the view that the First National Bank entered into an arrangement with the Stockgrowers' Bank

whereby the latter made the loan, but really for the other bank, the latter would not have changed its position throughout the transaction, since its new mortgage would be but a renewal of the old. But even in that view the last mortgage would still be affected by the infirmity of the first mortgage, since it could cover only the property originally mortgaged, and, as we have pointed out, there is no evidence to show that at the time when the last mortgage was taken any of the stock of merchandise included in the first mortgage remained in the possession of the mortgagor.

The decree is affirmed.